COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| GUADALUPE P. PEREZ, | § | No. 08-12-00037-CV |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | County Court at Law No. 3 |
| OLD WEST CAPITAL CO., Assignee of Hudson & Keyse, L.L.C., | § | of Tarrant County, Texas |
| | § | |
| Appellee. | § | (TC#2007-058909-3-A) |
| | § | |

## **O P I N I O N**

Guadalupe Perez appeals the trial court's denial of a bill of review. Perez brings three issues: (1) the trial court erred in denying the bill of review based on lack of service where evidence established the process server failed to comply with the Rule 106 order; (2) the evidence was legally and factually insufficient to support the findings of fact; and (3) the conclusions of law were erroneous as a matter of law. For the reasons set out below, we affirm.

### BACKGROUND

Perez filed a petition for bill of review against Old West Capital Co. from a default judgment in July 2008. In her bill of review, Perez alleged: (1) she did not reside at 1501 N. Sylvania Avenue, Ft. Worth, where service of process was effectuated; and (2) the process server did not comply with the trial court's order for substitute service.

In the underlying case, the trial court authorized substitute service upon Guadalupe Perez pursuant to Rule 106 of the Texas Rules of Civil Procedure. The trial court's order authorized service by: "Attaching a true copy of this Order, the Citation and the Original Petition securely to the front door or entry way . . ." at 1501 N. Sylvania Ave., Ft. Worth, Texas.[1]

On the hearing on Perez's bill of review, the process server, Rudolf Jackson testified he first went to the Sylvania address to serve Guadalupe Perez in February 2008. Upon arrival, he saw there was no walkway to the front of the house and the front porch had "wrought iron restraints" surrounding it. In addition, the front wrought iron had a rusty padlock which indicated to Jackson the door was unused. As a result, he could not reach the front door of the house. However, there was a paved sidewalk leading to a door on the side of the house. The side door had a screen with wrought iron and a wooden door behind the screen. According to Jackson, it appeared to him the side door was the main entry, because it had a sidewalk and steps from the curb to the side entrance unlike the front door.

At that time, a woman answered the door at the side entrance, she identified herself as Alice Perez. She told Jackson that Guadalupe Perez was not home but Jackson should return on a weeknight. Jackson gave Alice Perez his business card. Jackson found a telephone number for Guadalupe Perez, and left three messages to return his call. Over the next month, Jackson returned to the Sylvania address on three more occasions, once in the evening and twice in the morning. Each time, there was no answer and he left a handwritten note on the door. Subsequently, Jackson prepared his affidavit in support of substitute service pursuant to TEX.R.CIV.P. 106.

---

[1] This order is dated April 17, 2007. While not stated clearly in the record before this Court, the year appears to be incorrect, as the underlying suit was not filed until December of 2007.

Based on his observations, Jackson believed that the side entrance was the main entry of the home. Jackson put the citation and petition in a plastic bag, sealed it, and attached the bag with duct tape to the wrought iron of the screen door at the side entrance of the house on Sylvania. In the return of service attested to by Jackson, he indicates that in May 2008, citation was served by "attaching to the front entrance of the address listed above, per Order for Substitute Service . . . ."

Perez stated she never received notice of the lawsuit. Perez moved to Weatherford, Texas in 2007 and did not reside at the Sylvania Avenue address in 2008. Perez introduced a number of exhibits which indicated she resided with her husband in Weatherford. Perez admitted to first acquiring the Sylvania property in 2005 and conveyed it to her daughter in 2006. In October 2008, her daughter conveyed the house back to Perez. Perez said her son and daughter-in-law lived at the Sylvania house. However, Perez would return to the Sylvania house every two or three days to check the mail.

In 2007 and 2008, Perez and her husband claimed the Sylvania property as their homestead with an over 65 exemption for the property taxes. The Sylvania address was listed on Perez's driver's license. The telephone number at the Sylvania address was listed in her and her husband's name. The telephone number Jackson called was her telephone number at the Sylvania house. Perez did not receive mail in Weatherford, she used the Sylvania property as her mailing address. In 2008, Perez's mail received at the Sylvania address included: (1) property tax statements; (2) bank statements; and (3) insurance bills. Perez paid the gas and electricity bill at the Sylvania house and had a key to the property. Under direct examination she stated she did not sleep at the Sylvania house. However, during her cross examination, she admitted, occasionally, she would spend the night at the house "[i]f the weather was real bad." Perez stated she did not

3

use the front door, but the side entrance for entry.

According to Perez's husband, in 2008, each of their vehicles was registered to the Sylvania address. Further, he, like Perez, used the side door or, sometimes, a back door but not the front door for entry into the home. Although he accompanied Perez almost every time she went to the house, he did not recall finding any papers attached to the side door. However, he stated he has Alzheimer's and "can't even remember my name sometimes."

The trial court entered an order denying the bill of review on October 13, 2011. Perez requested findings of fact and conclusions of law and a motion to reconsider. The court issued one finding of fact and two conclusions of law:

## I.     FINDINGS OF FACT

1. Plaintiff Guadalupe P. Perez was duly served by substituted service on May 20, 2008 at 1501 N. Sylvania Road, Fort Worth, Tarrant County, Texas 76111.

## II.     CONCLUSIONS OF LAW

1. The method of service used in Cause 2007-058909-3 in this Court complied with the Court's Rule 106 Order for substituted service and was reasonably effective to give Guadalupe P. Perez notice of said suit.
2. Guadalupe P. Perez has failed to present any credible corroborating evidence that substituted service in Cause 2007-058909-3 in this Court was not duly and properly effected upon her.

The motion to reconsider was overruled by operation of law. This appeal follows.

## Bill of Review

Perez first contends that the trial court erred by denying the bill of review, based on the process server's failure to strictly comply with the order permitting substitute service. Specifically, Perez argues Jackson failed to comply with the order by taping the citation and petition to the side entrance instead of the front door.

4

**Standards of Review and Applicable Law**

A bill of review is an independent action to set aside a judgment that can no longer be challenged by a motion for new trial or appealed. *Wembley Inv. Co. v. Herrera,* 11 S.W.3d 924, 926-27 (Tex. 1999). A bill of review is usually a direct attack on a previous trial court's judgment that is no longer subject to an appeal or a motion for new trial. *Fernandez v. Frost Nat'l Bank*, 315 S.W.3d 494, 504 (Tex. 2010); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Pursley v. Ussery*, 937 S.W.2d 566, 567 (Tex.App.--San Antonio 1996, no writ).

In reviewing the granting or denial of a bill of review, every presumption is indulged in favor of the court's ruling, which will not be disturbed unless it is affirmatively shown that there was an abuse of discretion. *Nguyen v. Intertex, Inc*., 93 S.W.3d 288, 293 (Tex.App.--Houston [14th Dist.] 2002, no pet.). The trial court may be reversed for abusing its discretion only if it has acted in an unreasonable or arbitrary manner, or without reference to any guiding rules and principles. *Id.* at 293. A trial court does not abuse its discretion as long as its decision is within the zone of reasonable disagreement. *PPC Transp. v. Metcalf*, 254 S.W.3d 636, 641 (Tex.App.--Tyler 2008, no pet.), *citing Natural Gas Pipeline Co. of Am. v. Pool,* 30 S.W.3d 618, 632 (Tex.App.--Amarillo 2000), *rev'd on other grounds*, 124 S.W.3d 188 (Tex. 2003).

To prevail on a bill of review, a petitioner must plead and prove: (1) a meritorious defense; (2) that he or she was prevented from making due to the fraud, accident, or wrongful act of his or her opponent; and (3) that the failure to appear was unmixed with any fault or negligence of his or her own. *Ross v. Nat'l Ctr. for the Employment of the Disabled*, 197 S.W.3d 795, 797 (Tex. 2006). Further, the petitioner must normally show that he or she exercised due diligence to assert all adequate legal remedies before filing the bill of review. *Caldwell v. Barne*s, 975 S.W.2d

5

535, 537 (Tex. 1998).

However, the absence of proper service modifies the elements of a bill of review. When a party has not been properly served, that party "is entitled to a bill of review without a further showing, because the Constitution discharges the first element, and lack of service establishes the second and third." *Ross*, 197 S.W.3d at 797. This is true even if a party becomes aware of the proceedings and fails to participate. A party, who has acquired knowledge but was not properly served, has no duty to participate in the proceedings. *Caldwell v. Barnes*, 154 S.W.3d 93, 97 n.1 (Tex. 2004); *Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex. 1990)("[M]ere knowledge of a pending suit does not place any duty on a defendant to act."). Although diligence is required from properly served parties or those who have appeared, those not properly served have no duty to act. *Ross*, 197 S.W.3d at 797-98.

Rule 106 of the Texas Rules of Civil Procedure provides for substituted service in certain circumstances:

> (b)    Upon motion supported by affidavit stating the location of the defendant's . . . usual place of abode or other place where the defendant can probably be found . . . the court may authorize service
>
> > (1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or
> >
> > (2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

TEX.R.CIV.P. 106(b).

The Supreme Court of Texas has held actual notice is not only unnecessary, but is in fact, contrary to Rule 106(b)'s underlying rationale:

> Under Rule 106(b), a court may authorize substituted service only after a plaintiff

has unsuccessfully tried to effect personal service or service . . . as required by Rule 106(a). TEX.R.CIV.P. 106(b). A plaintiff may resort to substituted service only upon the failure of these methods which provide proof of actual notice. Thus, to require proof of actual notice upon substituted service would frustrate Rule 106(b)'s purpose of providing alternate methods for plaintiffs . . . . In fact, the rule itself contemplates other procedures which will not necessarily furnish evidence of actual notice. The rule allows service by leaving a copy of the citation and petition with someone over the age of sixteen at the defendant's place of abode as stated in the affidavit. TEX.R.CIV.P. 106(b)(1). This method of substituted service provides no evidence in the record of when defendant received actual notice, but rather only provides proof of when plaintiff actually left the copies with someone in compliance with the rule. Service by mail achieves a similar result because it allows a plaintiff to properly post a return of service which demonstrates that the plaintiff has precisely followed the court's order of service by means reasonably calculated to provide actual notice.

*State Farm Fire and Cas. Co. v. Costley*, 868 S.W.2d 298, 298-99 (Tex. 2003).

Rule 107 requires an adequate return of service before a court may grant a default judgment. TEX.R.CIV.P. 107(a)-(h). Rule 107 provides that "[w]here citation is executed by an alternative method as authorized by Rule 106, proof of service shall be made in the manner ordered by the court." TEX.R.CIV.P. 107(f). In those cases where the order for substituted service does not set out a specific manner of proof of service, Rule 107 controls what constitutes proper service. *Bautista v. Bautista*, 9 S.W.3d 250, 251 (Tex.App.--San Antonio 1999, no pet.)("Although substituted service was authorized under rule 106 in this case, the order did not specify a different manner of proving service; therefore, proof of service in accordance with rule 107 is required.").

Rule 106 allows an individual to be served "where the defendant can probably be found . . . ." TEX.R.CIV.P. 106(b). Service may be effected on a defendant wherever he may be found within the county and is "not limited to the address mentioned". *Garcia v. Gutierrez*, 697 S.W.2d 758, 760 (Tex.App.--Corpus Christi 1985, no pet.). *See also Magan v. Hughes Television Network, Inc.*, 727 S.W.2d 104, 105 (Tex.App.--San Antonio 1987, no pet.)(Substituted service at

7

the address where defendant's children lived and "it was shown that other communications reached him by delivery at the same place.").

If a court finds that the rules of service have been strictly adhered to, the recital's in the return by the process server creates a presumption that service was accomplished. *Huffeldt v. Competition Drywall, Inc.,* 750 S.W.2d 272, 273 (Tex.App.--Houston [14th Dist.] 1988, no writ); *see also Min v. Avila,* 991 S.W.2d 495, 501 (Tex.App.--Houston [1st Dist.] 1999, no pet.). The presumption can be rebutted in a bill of review. *Huffeldt,* 750 S.W.2d at 273; *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co., Inc.,* 186 S.W.3d 571, 573-74 (Tex. 2006). The party asserting lack of service must corroborate it with "evidence of supporting facts and circumstances" by a preponderance of evidence. *Min,* 991 S.W.2d at 501; *Ward v. Nava,* 488 S.W.2d 736, 738 (Tex. 1972).

### Application of law to facts

At the outset, we find the term "front door" refers to what an objective visitor would regard as being the primary entrance. *C.f. State v. Somfleth*, 8 P.3d 221, 226 n.7 (Or.App. 2000)("We use 'front yard' or 'front door' to refer to what an objective visitor would regard as being the primary entrance to the property."). The plain language of the Rule 106 order allowed for service to be accomplished by "[a]ttaching a true copy of the Order, the Citation and the Original Petition securely to the front door or entry way" at the same address.

Unequivocally, the side door was the primary entry to the house. Perez and her husband attested to this. Jackson observed the "front door" to the Sylvania address was inaccessible from the sidewalk. The front door was locked with a rusty padlock and barred by the wrought iron restraints. Jackson correctly surmised the side entry was the main entry to the house because it

8

had a sidewalk and steps leading from the curb to the side entrance. Jackson securely attached the citation and petition to the side door. He prepared and filed a return of service which indicated service was effectuated by "attaching to the front entrance of the address listed above, per Order for Substitute Service . . . ."

The trial court reasonably concluded the side entry of the house was effectively the "front door or entry way," or the "front entrance" of the residence. Such an inference is supported by: (1) the existence of an unimpeded path to the side door; (2) the lack of the same to the "front" door, which also happened to be barricaded and padlocked; and (3) it was the only entrance Perez and her family used. The trial court commented on the service of process, stating the court was not:

> [P]articularly pleased with [Jackson's] return of service which indicated he posted it on the front entrance of the address listed above. All the testimony . . . shows that that side entrance is the one that they used to gain access to the property.
> So I'm going to find that service was appropriate and in accordance with the Court's order for substituted service. The whole point of substituted service obviates the need to prove actual notice because for all we know, Alice took it down. But it got onto the door that everybody admits was the primary entryway to the residence.

Clearly, Jackson complied with the court's Rule 106 order by attaching the citation "securely to the front door or entry way."

A strict reading of the term "front door" in Rule 106 in the instant case leads to an incongruous possibility. If Jackson had attached the citation to the actual "front" door, the documents would have had less opportunity than the side door in achieving actual notice.

Perez argues the return of service, in which Jackson indicates he affixed the citation to the front door, was facially incorrect because it was actually attached to the side entrance. We do not agree the service of process in this case was legally deficient.

Other courts of appeal have found that discrepancies on the return of service do not render

9

service ineffective. For example, minor variations in names, such as omission of periods or corporate abbreviations, do not render service ineffective. *See, e.g., Myan Management Group, L.L.C. v. Adam Sparks Family Revocable Trust,* 292 S.W.3d 750, 753 (Tex.App.--Dallas 2009, no pet.)(dropping "Group, L.L.C." and changing "L.L.C." to "LLC" are not fatal to effective service). However, alterations of a name, such that a court of appeals could not decipher whether the person listed on the service was the same as both names indicated, do render service ineffective. *See, e.g. Lytle v. Cunningham,* 261 S.W.3d 837, 840-41 (Tex.App.--Dallas 2008, no pet.)("Chris" and "Christopher" are distinct names). Listing a different address on the return and citation will not render service invalid. *See, e.g., Garcia v. Gutierrez*, 697 S.W.2d 758, 760 (Tex.App.--Corpus Christi 1985, no writ).

In a recent case, *In re M.C.B.*, 400 S.W.3d 630 (Tex.App.--Dallas 2013, no pet.)(op. on reh'g) a party was served using substitute service under Rule 106. The return of service indicated the citation was delivered "by 106 to door of . . . address." However, at the default judgment hearing, the process server testified that he had duct-taped the citation to the front door. *Id.* at 634. The court, in reviewing the trial court's grant of summary judgment on the bill of review, held the trial court was allowed to consider the testimony of the process server. Further, the trial court could conclude the server acted in strict compliance with the Rule 106 order. *Id.* at 635. Appellant's argued the return of service was defective. In their view, the trial court's order required the citation be "attached or affixed" was not substantially complied with when the return of service stated "by 106 to door." *Id.* The court overruled that argument and affirmed the trial court's denial of the bill of review.

Applying *M.C.B.*, the trial court was entitled to consider Jackson's testimony the "front

10

door" was not the main entry to the residence but rather the side door. On the return of service, Jackson indicated service was affixed to the front entrance. The court could reasonably conclude the return of service was acceptable in complying with the Rule 106 order. More importantly, the trial court's Rule 106 order allowed Jackson to serve Perez at the "front door or entry way." Certainly, the trial court's ruling is within the zone of reasonable disagreement and therefore, not an abuse of discretion. *PPC Transp.*, 254 S.W.3d at 641.

Additionally, while Perez maintained she lived in Weatherford, the court had sufficient evidence to find that service of process could be effected upon her at the Sylvania address. Her son and daughter-in-law lived at the home, her mail was received there, and she had claimed the address as her homestead. She and her husband travelled to the house at least two times a week, staying overnight occasionally. The address was listed on her driver's license, the telephone was in her name, she paid two of the utilities, and she had a key to the home. Perez's first issue is overruled.

**Findings of Fact and Conclusions of Law**

Perez's second and third issues contend the evidence was legally and factually insufficient to support the findings of fact and the conclusions of law and were erroneous as a matter of law. We will consider these issues jointly.

**Standard of Review and Applicable Law**

Findings of fact by a court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones*, 917

11

S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

We may sustain a legal sufficiency challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 TEX.L.REV. 361, 362-63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable fact finder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co*., 715 S.W.2d 629, 635 (Tex. 1986)(op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

We review a trial court's conclusions of law *de novo* to determine if the trial court drew the correct legal conclusions from the facts. *Bundren v. Holly Oaks Townhomes Ass'n, Inc*., 347

12

S.W.3d 421, 429-30 (Tex.App.--Dallas 2011, pet. denied); *Wright Grp. Architects–Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 199 (Tex.App.--Dallas 2011, no pet.). We must uphold conclusions of law if "any legal theory supported by the evidence sustains the judgment." *Bundren*, 347 S.W.3d at 430. We will reverse the trial court's judgment only if the conclusions of law are erroneous as a matter of law. *Kaplan v. Kaplan,* 129 S.W.3d 666, 668 (Tex.App.--Fort Worth 2004, pet. denied).

### Application of Law to Court's Findings and Conclusions

Perez first challenges the trial court's sole Finding of Fact that Perez was duly served by substitute service on May 20, 2008 at 1501 N. Sylvania Road, Fort Worth, Tarrant County, Texas 76111. Perez contends Jackson did not comply with the court's Rule 106 order and the trial court disregarded the "strict compliance" service of process requires. She asserts the evidence allowed for only a single inference – there was no compliance with the Rule 106 order. We disagree.

As discussed above, the uncontested evidence demonstrates the "front door" was not used for entry. Jackson's observations and Perez's testimony corroborated the fact only the side door was used by Perez and her family as the primary entrance. Jackson attached the citation and the accompanying petition to the main entry or "front entrance." The trial court's Rule 106 order allowed process to be served on the "front door or entry way." While the trial court expressed some concern with Jackson's language on the return of service, it found the citation was properly attached to the primary entrance of the Sylvania residence. While Perez was adamant she and her husband lived in Weatherford, there was sufficient evidence for the court to find that the Sylvania address was where Perez could be found.

We conclude there is more than a mere scintilla of evidence supporting the trial court's

13

finding. After consideration and weighing all the evidence presented, we are satisfactorily convinced the credible evidence supporting that finding is not so weak as to be clearly wrong and manifestly unjust. *Pool*, 715 S.W.2d at 635. We hold the sole Finding of Fact to be both legally and factually sufficient. Perez's second issue is overruled.

Perez next challenges the two Conclusions of Law issued by the court, which is reviewed *de novo*. As previously discussed, there is sufficient evidence to support the trial court's finding the method of service complied with the court's Rule 106 order. Because the trial court's Finding of Fact supports Conclusions of Law Number One, the trial court did not err in reaching that challenged conclusion.

After extensive review of the record, we hold that the trial court did not err by entering Conclusions of Law Number Two. Perez asserts she did not receive notice. She never used the front door for entry into the home but only the side entrance. She visited her family often at the home and occasionally spent the night there. Mr. Perez could not recall finding any papers attached to the side entrance. The only corroboration to Perez's assertion was her husband's testimony, but, sadly, he has Alzheimer's and "can't even remember [his] name sometimes."

In light of the evidence presented, Conclusions of Law Number Two was not so against the great weight and preponderance of the evidence to be clearly wrong or unjust. *City of Keller*, 168 S.W.3d at 826; *Cain*, 709 S.W.2d at 176. The trial court, in its role as fact finder, was entitled to resolve the conflicts in the evidence and to choose which testimony to believe. *See City of Keller*, 168 S.W.3d at 819. Given Jackson's testimony and Mr. Perez's weak corroboration as to the lack of notice, we find the evidence was legally and factually sufficient to support the trial court's Conclusions of Law Number Two. Perez's third issue is overruled.

14

**CONCLUSION**

Having overruled each of Perez's issues, the judgment of the trial court is hereby affirmed.

August 14, 2013

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.